In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1903

NATHANIEL HARPER,

*Plaintiff-Appellant,*

*v.*

VENERIO M. SANTOS and TERRI DEAN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 12-CV-1188 — **Nancy J. Rosenstengel**, *Judge.*

ARGUED NOVEMBER 16, 2016 — DECIDED FEBRUARY 13, 2017

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges.*

PER CURIAM. Nathaniel Harper, an Illinois prisoner, sued a prison doctor, Venerio Santos, and nurse, Terri Dean, for deliberate indifference towards his pain following nine abdominal surgeries, the management of his diet, and inattention to a possible renal cell tumor. *See* 42 U.S.C. § 1983. The district court granted summary judgment for the defendants, concluding that Harper had not produced evidence from

which a jury could find that either defendant ignored a substantial risk of harm. We affirm.

Harper, a prisoner at the Centralia Correctional Center, was seen by a nurse at the health center on December 3, 2010, for complaints of nausea and vomiting. Harper asserts that Nurse Dean examined him, but the defendants contend that he was examined by another nurse. The nurse determined that Harper was constipated and sent him back to his cell with instructions to drink clear liquids and return if symptoms persisted.

The parties also disagree over events the following day, when Harper returned with complaints that he still had stomach pains and was vomiting. Harper asserts that Nurse Dean evaluated him, laughed at his plight, and told him that there was no way to relieve his constipation. He says that he returned to the health center twice more that day, only to be sent back to his cell each time and told that the nurses could not help him. The defendants, however, maintain that two nurses saw Harper at 9:00 a.m. and that Dr. Santos ordered him admitted for observation. They assert that Harper was seen and evaluated by nurses three more times that day.

Dr. Santos examined Harper on December 5 and ordered an x-ray of his abdomen. The x-ray indicated a "GI gas pattern most consistent with" an intestinal blockage, so the doctor arranged for Harper to be transferred to St. Mary's Good Samaritan Hospital to rule out a small-bowel obstruction.

Harper was admitted to St. Mary's that same day and later operated upon for a bowel obstruction. He remained there for 38 days due to post-surgical complications, including inflammation of a membrane lining the abdominal wall,

pneumonia, an infection from a catheter, a fistula, an infection at a surgical site, dehydration, and anemia. Altogether he underwent nine surgeries at the hospital and, by the time he left, he was equipped with a temporary colostomy bag.

Following Harper's discharge, the doctors at St. Mary's recommended a course of treatment. They advised him that he could have a regular diet, but that he should drink plenty of fluids. For pain relief, they recommended, among other things, that he take 650 mg of Tylenol and Vicodin 500 mg/5 mg every six hours as needed. In addition, the doctors advised Harper to get an ultrasound every three months to monitor a mass on his kidney that had shown up on an x-ray; in their discharge summary, however, the doctors noted that decisions about monitoring would be left to his "primary care physician."

When Harper returned to Centralia in January 2011, Dr. Santos discontinued Harper's Vicodin prescription but responded to his subsequent complaints of pain by upping his Tylenol dosage to two 500 mg tablets every 6 hours, as needed. This dosage was reduced the following month to 650 mg of Tylenol every 6 hours.

Besides the pain, Harper had difficulty eating. Dr. Santos started Harper on a pureed diet, but Harper began vomiting multiple times a day. Dr. Santos prescribed Harper to consume between meals one can of Fibersource, a nutritional supplement, to which he initially responded well; he was able to eat a salami sandwich, apple slices, and carrots. But Harper soon reported that he could not tolerate solid food, so his diet was changed to include protein shakes. This led to hunger pangs, and Harper often complained that he was "starving" or that he did not feel well following his meals.

Harper requested double portions of food from Nurse Dean, and Dr. Santos authorized him to receive double-meal trays. When symptoms continued, Harper asked Dr. Santos to order an egg-based diet because he could tolerate them, but Dr. Santos refused. Over time, Harper expressed fears that he was "fading away" and didn't think he was "going to make it." The nurses noted that Harper looked "thin" and "frail," but by January 30, he again was tolerating food well and had stopped complaining of nausea or vomiting.

Harper also had minor run-ins with Nurse Dean about his care. He states that she removed an extra pillow that he was using to elevate his leg and relieve his foot pain. Harper once refused to give the pillow to her, so she filed a disciplinary report with the prison. On another instance, Harper said that she refused his request to empty his colostomy bag.

To monitor the mass on his kidney, Harper had an ultrasound at St. Mary's in April 2011, and after that Dr. Santos monitored it with sporadic blood and urine tests that were negative. According to Harper, Dr. Santos once told him that he would not treat him because he "only" had a kidney cyst and on another occasion in 2012, Dr. Santos screamed, "Never," when Harper asked him for the date of a follow-up ultrasound.

Dissatisfied with his medical care during his 88-day stay at the health center, Harper filed grievances with the prison. While the appeals of his grievances were pending, Harper—noting imminent deadlines for the statute of limitations on his claims—filed this suit in November 2012. The defendants eventually moved for summary judgment, arguing that Harper's claims against Dr. Santos and Nurse Dean amounted to mere disagreements over his preferred course of treat-

ment, and that Harper could not show that the actions of either defendant rose to the level of deliberate indifference.

The court determined that Dr. Santos and Nurse Dean were not deliberately indifferent to Harper's serious medical conditions, and granted them summary judgment. Harper, the court observed, had not shown that the increased dose of Tylenol ordered by Dr. Santos was ineffective or that Vicodin was such a superior treatment option that Dr. Santos's failure to prescribe it amounted to deliberate indifference. Nor had he shown that Dr. Santos denied him adequate nutrition; as the court stated, he was accommodated with protein drinks, meal-replacement drinks, and supplemented meals. Harper may have preferred eggs, the court noted, but he was not entitled to dictate his diet. As for the mass on his kidney, the court explained that Harper was not entitled to specific treatments, especially since he presented no evidence showing that monitoring his condition through blood and urine tests substantially departed from accepted medical practice or that an ultrasound was a superior treatment option. With respect to Nurse Dean, the court found that she was not deliberately indifferent to Harper's presurgical needs, given that he was examined and treated each time that he appeared at the health center. She may not have acted as compassionately as he would have liked, the court concluded, but he did not establish that she acted with deliberate indifference.

Prison officials are liable under the Eighth Amendment for cruel and unusual punishment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The parties agree that Harper suffered from a serious medical condition, so the only ques-

tion is whether Dr. Santos and Nurse Dean "acted with a 'sufficiently culpable state of mind' in failing to provide adequate care or treatment for that condition." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 349 (7th Cir. 2016) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

On appeal Harper first argues that the district court erred when it concluded that Dr. Santos was not deliberately indifferent to his medical needs by discontinuing his Vicodin prescription. Harper contends that a genuine issue of material fact exists as to Dr. Santos's state of mind because he disregarded Harper's Vicodin prescription from the hospital.

The district court correctly granted summary judgment to Dr. Santos on this claim. Failing to follow instructions received from outside experts can amount to deliberate indifference, *Gil v. Reed*, 381 F.3d 649, 661–64 (7th Cir. 2004), but the medical records here reflect that Dr. Santos attempted to manage Harper's pain. After the surgeries, Dr. Santos continued to monitor Harper, visiting him on 31 out of 88 days that Harper stayed at the health center. Dr. Santos continued to see Harper two to three times per week until April, and this constant, ongoing assessment of his condition cannot create an inference of deliberate indifference. *See McGee v. Adams*, 721 F.3d 474, 482 (7th Cir. 2013). Harper also provided no evidence that the Tylenol did not alleviate his pain or that Dr. Santos intended to cause him pain. *See Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Harper asserts that he sought more medication to relieve his pain, but the health center's medical records reflect that he regularly was given Tylenol and did not complain of pain.

Harper next argues that the district court erred when it granted summary judgment on his claim that Dr. Santos act-

ed with deliberate indifference by depriving him of adequate nutrition. Harper maintains that he should have been fed eggs, the only food, he says, that he could tolerate after his surgeries.

We agree with the district court that Dr. Santos's active monitoring of Harper's dietary needs represents the "antithesis of deliberate indifference." *See* McGee, 721 F.3d at 482. Harper was not entitled to dictate the terms of his care, *see Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011), including whether his meals consisted mostly of eggs. Dr. Santos also altered Harper's diet to meet his nutritional needs by ordering that he take Fibersource supplements to counter the nausea and vomiting and by ordering double-meal trays for Harper once he showed that he could tolerate solid foods.

Harper next contends that the district court incorrectly determined that Dr. Santos was not deliberately indifferent to his kidney issue. He points to the discharge summary from St. Mary's, which, he argues, instructed him to get an ultrasound of his kidneys every three months for monitoring.

The district court properly granted summary judgment for Dr. Santos on this claim because Dr. Santos's decision to use blood tests was a matter of medical judgment. Harper has not shown that blood and urine tests would fail to monitor his kidney, nor has he demonstrated that the tests substantially depart from accepted medical practice. Harper is not entitled to dictate which tests Dr. Santos can use to monitor his condition, *see Arnett*, 658 F.3d at 754, and the decision whether medical imaging should be used is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Counsel's representations at oral argument and Dr. San-

tos's affidavit also establish that Harper has not been harmed by the lack of ultrasound tests, a fact fatal to his deliberate indifference claim. *See Gayton v. McCoy*, 593 F.3d 610, 624–25 (7th Cir. 2010).

As for Harper's claims against Nurse Dean, he disagrees with the court's conclusion that no inference of deliberate indifference can be drawn from her (1) failure to treat him when he first appeared at the health clinic with stomach pain, (2) confiscation of his pillow, and (3) failure to empty his colostomy container.

We believe that the district court correctly entered summary judgment for Nurse Dean because Harper has not established that her efforts were "blatantly inappropriate," *Arnett*, 658 F.3d at 751 (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), or that she "recklessly disregarded" his needs, *see Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). With regard to his claim that Nurse Dean ignored his presurgical pain, Harper was evaluated and treated each time that he appeared at the health center, given a treatment plan, and told to return if his symptoms persisted. Harper is not entitled to dictate whether Nurse Dean should have treated him differently or immediately transferred him to St. Mary's. *See Arnett*, 658 F.3d at 754. His assertion that Nurse Dean laughed at him also does not establish that she acted with deliberate indifference. *See Townsend v. Cooper*, 759 F.3d 678, 684, 688–90 (7th Cir. 2014) (deliberate indifference not established by evidence of incidents where two psychologists laughed at the plaintiff and told him that he was "making things up" in response to the plaintiff's complaints that he was hearing voices). As for Harper's other claims—confiscating a pillow that Harper was not supposed to have

and refusing Harper's demand to empty his colostomy container do not reflect a deliberate indifference to his medical needs because her insensitivity does not demonstrate that she disregarded a substantial risk of harm to Harper. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

AFFIRMED.