NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 14, 2019[*]
Decided January 15, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 18-1773

| | |
|---|---|
| MONTRELL HOLMES, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 15-cv-667-SCW |
| | |
| VIPIN SHAH, et al., | Stephen C. Williams, |
| *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

Montrell Holmes sued three medical professionals at Pinckneyville Correctional Center for violating the Eighth Amendment through their deliberate indifference to his shoulder pain. A magistrate judge, presiding by consent, entered summary judgment

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for the defendants. The judge correctly reasoned that the undisputed evidence showed that the defendants had treated Holmes adequately, so we affirm the judgment.

We construe all facts and reasonable inferences in favor of Holmes, *see Daugherty v. Page*, 906 F.3d 606, 609 (7th Cir. 2018). During a game of basketball in July 2014, Holmes was hit in the shoulder. He asserts that a nurse told him to take pain relievers and that if the pain did not stop after eight weeks, he should go to the health care unit. His shoulder still bothered him three months later, so he went to that unit. He told Lauren Barron, the nurse on duty, that he had been taking pain relievers that he had purchased from the commissary and other inmates. He had no record of the drug types or dosage from his self-medication, but said that the drugs were ineffective. Barron examined Holmes and saw no signs of discomfort or abnormalities. Because he had not yet been seen three times for his shoulder pain, she followed prison protocol and declined Holmes's request to see a doctor. She prescribed Tylenol and told Holmes to return if his symptoms did not improve. Unhappy with this result, Holmes filed a grievance and wrote to Shelly Shipley, the Director of Nursing, for more care for his shoulder pain. He received no response from Shipley, and his grievance was denied because he was already receiving treatment.

Over the next six weeks, Holmes returned to the health unit to complain about his shoulder. In October, a nurse examined him and detected no loss of function, but switched Holmes to Motrin and suggested that he stop exercising to allow his shoulder time to heal. Another nurse saw him two weeks later. She too noted no obvious signs of discomfort, but decided that, because he had now been seen three times for the same complaint, he should see the physician, Dr. Vipin Shah. Later that week, Dr. Shah ordered an x-ray, prescribed naproxen for pain, and instructed Holmes to follow up in two weeks. The x-rays revealed no fracture, abnormality, or joint separation. Despite Dr. Shah's advice to see him again, Holmes did not request a follow-up appointment. Instead, he complained at least two more times to Shipley that he was still in pain and had not been told the results of the x-ray. Shipley again did not respond.

Dissatisfied with Dr. Shah and Shipley, Holmes filed another grievance. He complained that he had not been given more pain medication for his shoulder, that he had not learned the results of the x-ray, and that Shipley had not responded to his letters. Shipley told Holmes's grievance counselor that Holmes was scheduled for the next available opening in the health care unit where he would receive a follow-up review of his shoulder pain and his x-ray results. Before this occurred, however,

Holmes was transferred to Illinois River Correctional Center, where he received treatment that satisfied him.

Upset with his treatment at Pinckneyville, Holmes unsuccessfully sought administrative relief and then filed this suit under 42 U.S.C. § 1983 against his medical providers for allegedly violating the Eighth Amendment. The defendants moved for summary judgment, which the magistrate judge entered. First, the judge ruled that no rational jury could find that Nurse Barron's initial treatment of Holmes's shoulder pain with pain killers showed deliberate indifference. The judge next ruled that because Dr. Shah saw Holmes once, prescribed naproxen, and ordered an x-ray and a follow-up visit, a jury could not find that he was deliberately indifferent. Finally, the judge decided, a jury could not find that Shipley violated the Eighth Amendment by not responding to Holmes's letters, because each time Holmes wrote her, he was already receiving adequate treatment.

On appeal, Holmes first discusses Barron, the nurse. He argues that, because he told Barron at their first meeting that he had been using pain relievers for over eight weeks and they were ineffective, her refusal to refer him immediately to a doctor violated the Eighth Amendment. Healthcare staff at a prison violate the Eighth Amendment if they intentionally disregard a known, objectively serious medical condition that poses an excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 106–07 (1976); *Gonzalez v. Feinerman*, 663 F.3d 311, 313 (7th Cir. 2011). But Barron did not disregard such a risk. She examined Holmes, noted no visible signs of injury, and knew that medical personnel had not seen him three times for complaints about his shoulder injury. Following the prison's protocol requiring three attempts to resolve pain before a doctor's referral (a protocol that Holmes does not challenge), she reasonably prescribed him Tylenol and told him to return if his issues persisted. Although Holmes told Barron that the pain relievers he had used from the commissary and other inmates had been ineffective, he had no record of his self-medication for her to see. Therefore, a jury could not rationally find that Barron's proposed course of conservative treatment was such "a substantial departure from accepted professional judgment … as to demonstrate that [she] did not base the decision on such a judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 682 (7th Cir. 2008) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)).

Holmes next argues that Dr. Shah was deliberately indifferent to his medical needs. He contends that his complaints to Dr. Shah about his pain necessitated an MRI instead of an x-ray to diagnose him properly. But having not submitted to the district

court any evidence that an MRI was essential to assess his complaints, Holmes is not entitled to a trial over his preferred diagnostic tool. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). No evidence refutes that Dr. Shah adequately treated Holmes by prescribing pain medication, ordering an x-ray to rule out the possibility of a fractured shoulder (as it did), and instructing Holmes to follow up if pain persisted (which Holmes failed to do). *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). Thus, summary judgment in favor of Dr. Shah was proper.

Last, Holmes argues that Shipley was deliberately indifferent to his injury because she ignored his letters and thereby refused to help him obtain other medical treatment. But each time Holmes wrote Shipley a letter, he was (as we have explained) already receiving constitutionally adequate treatment. While Holmes may have wanted more treatment than pain killers and an x-ray, his mere disagreement with the course of adequate treatment is not enough to create a triable claim of deliberate indifference, *see Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Harper*, 847 F.3d at 927. Because Shipley's failure to respond to Holmes's letters did not reflect deliberate indifference to his medical needs, summary judgment in her favor was correct.

AFFIRMED