NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2019[*]
Decided May 15, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-3201

| | |
|---|---|
| DONTA JENKINS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 16-cv-684-bbc |
| DANIEL FRISCH, et al., *Defendants-Appellees*. | Barbara B. Crabb, *Judge*. |

## O R D E R

Donta Jenkins, a Wisconsin inmate, frequently saw his psychological clinicians at Columbia Correctional Center for evaluation and treatment for one year. He believed they did not provide appropriate treatment, so he sued the clinicians and their supervisor under 42 U.S.C. § 1983 for deliberate indifference to his mental health needs and under Wisconsin law for medical malpractice. The district court entered summary

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

judgment for the defendants, ruling that Jenkins at most had established that different medical professionals would have treated him differently. We affirm the judgment.

We review the evidence in the light most favorable to Jenkins and draw reasonable inferences in his favor. *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). As an initial matter, we address Jenkins's argument that the district court improperly disregarded his evidence. Jenkins often cited groups of medical records to support conclusory and argumentative statements, despite the court's order to identify supporting evidence clearly and its admonishment that it would not search the record. The district court therefore found that Jenkins had not complied with procedural rules, and it considered his factual assertions and denials only to the extent that they were supported by specific citations to the record. A court may require compliance with its orders and local rules, even from a pro se litigant, and it did not err in doing so here. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Jenkins arrived at the prison in November 2015, and Dr. Daniel Frisch, a psychology associate (a practitioner under the supervision of a licensed psychologist), became his primary clinician. At his previous institution, Jenkins's providers had diagnosed him with delusional disorder, persecutory type, but they had alternated his mental health classification between serious and non-serious.

Jenkins told Dr. Frisch at their first meeting that he would rather be in segregation than have a cellmate. He was not in segregation at that time, but within one week, Jenkins formed a noose with his bedsheets and threatened to kill himself. Dr. Frisch placed Jenkins on observational status for one day until he no longer had suicidal thoughts. One week later, Jenkins made another noose and again was placed in observation, but he soon reported that he was not suicidal and was removed. After several meetings with Dr. Frisch, Jenkins had not vocalized delusional or persecutory thoughts, and Dr. Frisch began to question Jenkins's diagnosis of delusional disorder. Dr. Frisch noted his concern that Jenkins was malingering to avoid having a cellmate and considered administering a test to determine Jenkins's reliability.

In December and January, Jenkins engaged in hunger strikes, and Dr. Frisch evaluated him to ensure he understood the risks. Dr. Frisch met with Jenkins nearly weekly to discuss Jenkins's concerns, including his fears that his cellmate and staff were manipulating him and his belongings and his desire to transfer to different facilities. Dr. Frisch suggested that Jenkins consider medication, so Jenkins asked to see a psychiatrist. Dr. Frisch scheduled an appointment for him the next day. Dr. Frisch also

developed a behavior-management plan with Jenkins, in which Jenkins committed to comply with institutional expectations and accept changes to his living situation.

Dr. Frisch met with Jenkins monthly through the spring and summer, and he confirmed at each session that Jenkins was not having suicidal ideation or thoughts of self-harm. In June, Dr. Frisch administered the MMPI-2, a test that evaluates whether the test taker is exaggerating psychological symptoms. The results showed that Jenkins was, so Dr. Frisch changed his diagnosis to "Malingering Psychotic Symptoms."

Dr. Frisch saw Jenkins in October, and they discussed Jenkins's thought patterns. Dr. Frisch attempted to help him realign his "bad thoughts" and explained that therapy could help him change his perspective and stay out of prison in the future. At the end of the month, Jenkins changed housing units, and he was assigned to a new clinician.

Also in October, Jenkins saw a psychiatrist, who believed that Jenkins's reports of auditory hallucinations were reliable. He diagnosed Jenkins with major depressive disorder with psychotic features and with a personality disorder, and he changed Jenkins's medications. A different psychiatrist saw Jenkins in March 2017; he noted Jenkins's reports of hearing voices, sustained the diagnoses, and adjusted his medications.

Jenkins also met four times with another Columbia psychology associate, Dr. Daniel Norge. Each time, Dr. Norge evaluated him for thoughts of suicide or self-harm, discussed his concerns, if any, and recommended that he follow up with his primary clinician, Dr. Frisch. Dr. Norge did not amend Jenkins's diagnosis at any time.

Jenkins sued Drs. Frisch and Norge and their supervisor for deliberate indifference to his mental health needs and for medical malpractice under Wisconsin law. After filing suit, Jenkins was released from prison to extended supervision. He soon violated the terms of his supervision, and a state administrative law judge revoked his supervision and ordered reincarceration. Based on the ALJ's review of a limited record, she concluded that Jenkins needed mental health treatment. But, the ALJ noted, Jenkins's records were marked "no mental health concerns," convincing her that Columbia had "discounted and failed to address his mental health needs."

The defendants moved for summary judgment, arguing that Jenkins received consistent and appropriate psychological treatment. Jenkins countered that the ALJ's decision, among other things, proved that his care had been substandard. The district

court agreed with the defendants and concluded that Jenkins did not present sufficient evidence to allow a reasonable jury to find that the defendants consciously disregarded his needs or were negligent in providing him treatment. Jenkins appeals.

We review the entry of summary judgment de novo. *Wilson*, 901 F.3d at 820. To survive a motion for summary judgment on a deliberate indifference claim, a plaintiff must provide some evidence that (1) he had an objectively serious medical need and (2) the defendants knew of and disregarded an excessive risk to his health. *Id*; *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012). Jenkins disputes only the district court's entry of judgment for Drs. Frisch and Norge; he therefore waives any argument about their supervisor's conduct. *See Crestview Vill. Apartments v. HUD*, 383 F.3d 552, 555 (7th Cir. 2004).

Jenkins argues that because two psychiatrists diagnosed him with "serious mental health issues" and deemed him reliable, the psychologist-defendants must have been deliberately indifferent to his mental health by not reaching the same conclusion and treating him accordingly.[1] And to show that he received inappropriate treatment, he points to the restrictive housing records on which his psychologists noted "[n]o mental health concerns." Jenkins says that these notations prove that his clinicians disregarded his mental health needs, and he emphasizes that the state ALJ cited the same records when criticizing his care at Columbia. But the complete record contradicts his assertion. The documents that Jenkins highlights address only his ability to adjust psychologically to restrictive housing, not his complete mental health; they are not medical reports. Other records detail the full scope of the care he received.

Based on the evidence submitted on summary judgment, a reasonable jury could not find that Dr. Frisch's ongoing care for Jenkins amounted to deliberate indifference to his serious health needs. He met with Jenkins almost weekly for three months and at least monthly after that. Each time, Dr. Frisch evaluated Jenkins for thoughts of self-harm, and he later tested Jenkins to determine whether Jenkins's diagnosis was appropriate. He then established what he believed was a more appropriate diagnosis, and he attempted to treat Jenkins with thought restructuring to help him cope with

---

[1] Jenkins does not say what care he should have received, but he alleged in his complaint that the inadequate care led to worsening mental health and self-harm, and he sought compensatory damages for pain and suffering as well as punitive damages. The former are not available for emotional or mental injuries without physical injury, however. *See* 42 U.S.C. § 1997e(e).

changes and difficulties. Dr. Frisch encouraged Jenkins to consider medication and scheduled an appointment with a psychiatrist when Jenkins requested one. And when Dr. Norge met with Jenkins, he answered Jenkins's questions, evaluated him for danger, and recommended that he follow-up with his primary clinician.

In the face of this record, Jenkins did not marshal sufficient evidence to create a triable issue on the adequacy of Dr. Frisch's or Dr. Norge's care. Jenkins presented no evidence that the treatment was not the product of the clinicians' medical judgment, so a reasonable jury could not find deliberate indifference to Jenkins's serious health needs. *See Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). Although Jenkins disagrees with his treatment, the meaningful and ongoing assessment of his needs that occurred here is the "antithesis of deliberate indifference." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017). There is no evidence that Dr. Frisch or Dr. Norge persisted in treatment they knew to be ineffective. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). Jenkins argues they must have been deliberately indifferent because other providers evaluated him differently, but disagreement among medical professionals does not alone establish deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

As for Jenkins's state-law claim for medical malpractice, a district court generally should relinquish supplemental jurisdiction when all federal claims are resolved before trial, but the only requirement is that it makes "a considered determination" whether to retain jurisdiction. *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010). Although the district court did not explain why it retained jurisdiction, no party complains, so in the interest of judicial economy, we resolve the appeal on the merits. *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 883 (7th Cir. 2009). Expert testimony is generally required to establish medical malpractice. *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 699 N.W.2d 524, 537 (Wis. 2005). But Jenkins did not submit any nor argue that a layperson could find negligence based on common knowledge. *See Christianson v. Downs*, 279 N.W.2d 918, 921 (Wis. 1979). On the other side, the defendants provided sworn testimony from their supervisor that all staff treated Jenkins with the appropriate standard of care. With nothing to contradict the licensed psychologist's opinion, no jury could conclude that Dr. Frisch or Dr. Norge negligently inflicted injury on Jenkins, so the district court correctly entered judgment on this claim.

AFFIRMED