NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 12, 2021[*]
Decided March 15, 2021

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1713

| | |
|---|---|
| JOHNATHAN L. FRANKLIN, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 17-cv-562-wmc |
| JOAN HANNULA, et al., *Defendants-Appellees.* | William M. Conley, *Judge.* |

## O R D E R

Johnathan Franklin, a state inmate, appeals summary judgment on his claim that the health workers who cared for his flat feet and skin treated those conditions with deliberate indifference and negligence by, among other things, not giving him Nike-brand boots. Because no reasonable jury could find that the defendants were deliberately indifferent or negligent to Franklin's medical needs, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Franklin has bilateral pes planus (flat feet). Following the advice of a childhood doctor and a prison physician, he wore cushioned or air-soled shoes when he was first incarcerated in 2003. After Franklin moved to his current facility in Stanley, Wisconsin, the physician there, Dr. Joan Hannula, approved custom-made orthotics for him in 2008. Later, Franklin transferred to an Illinois jail that again allowed him to wear air-soled shoes—specifically, Nike-brand boots. On his return to Stanley in 2012, prison staff replaced the Nike boots with standard, low-rise boots and, at the request of Dr. Hannula, an orthotics provider designed orthosis braces for Franklin to wear on his feet and ankles with the boots. Dissatisfied, Franklin asked Dr. Hannula in 2013 to get him Nike boots instead. She refused because, in her view, they were not medically needed, and arch supports or braces are the standard treatments for flat feet.

When Franklin remained unhappy, he received more treatment. He refused to wear the braces because of asserted pain, continued to insist on the Nike boots, and, without permission from prison staff, bought a pair of Nike boots in 2014. Staff permitted him to wear them, but because they were neither state issued nor medically necessary, he could wear them only at limited times. When he continued to complain to prison staff about his feet, Dr. Hannula sent Franklin to the orthotics provider seven times in 2016 to adjust his braces and to get custom arch supports. Also, Dr. Hannula and Jamie Barker, the manager of the prison's health services unit and a nurse, made sure that the arch supports and braces fit Franklin's standard boots. The parties dispute whether, in 2016, Dr. Hannula and Barker agreed to reclassify his Nike boots as his state-issued shoes so that he could wear them constantly. In any event, no one ever reclassified the Nike boots for him.

Dr. Hannula later referred Franklin to a podiatrist, Dr. Andrew Elliot, who also examined Franklin's feet. Dr. Elliot recommended that Franklin wear the arch supports; he advised using the braces (which he later observed could have caused skin "abrasions" and "scarring") only if the arch supports failed to work. Based on this advice, Dr. Hannula discontinued approval for the braces. Dr. Elliot also stated that, although he had "no problem" with Franklin wearing his Nike boots, he could wear any shoe that fit his orthotics. At Franklin's next visits with Dr. Hannula, he asked for any high-top shoe, but because his arch supports fit in his standard, low-top boots, and based on Dr. Elliot's recommendations, Dr. Hannula refused.

In addition to his flat feet, Franklin developed lesions and blisters on his legs and feet in 2015, and they were treated. From February to June 2016, prison medical staff

bandaged Franklin's feet daily, and they never noticed bleeding or scars. Dr. Hannula saw Franklin three times in 2016 to address the lesions, which Franklin attributed to his braces. She diagnosed him with lichen simplex chronicus (thickened skin) and reasoned that the lesions came from Franklin's scratching—not the braces—because the condition appeared even when Franklin was not wearing the braces. Dr. Hannula's view was confirmed by a dermatologist outside the prison in April 2016. Both Dr. Hannula and the dermatologist prescribed steroid cream to treat the skin condition.

After Franklin sued Dr. Hannula, Barker, and others, for violating the Eighth Amendment and state negligence law, the district court screened the complaint and dismissed all defendants except Dr. Hannula and Barker. *See* 28 U.S.C. § 1915A. When Dr. Hannula and Barker moved for summary judgment, Franklin asked the court to recruit counsel to help him find an expert witness. The court denied Franklin's request because he had effectively presented his case. It also entered summary judgment (and denied a later motion to reconsider, *see* FED. R. CIV. P. 59(e)), explaining that the defendants provided adequate care under the Eighth Amendment and state law.

On appeal, Franklin maintains that Dr. Hannula and Barker were deliberately indifferent to his medical needs. He argues that they recklessly denied him Nike boots, which other doctors had prescribed, and gave him braces that caused blisters. The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Dr. Hannula and Barker do not deny that Franklin has serious medical conditions, so we consider only whether a reasonable jury could conclude that they knew of, but disregarded, that condition. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). A medical professional's response to an inmate's medical needs violates the Eighth Amendment only when "no minimally competent professional would have so responded under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)).

No reasonable jury could find that Dr. Hannula provided constitutionally inadequate care. The doctor reasonably addressed Franklin's flat feet by providing arch supports and braces from 2012 through 2017. Dr. Elliot stated, without contradiction, that this care was proper for Franklin's flat feet. Also, during this time, Franklin was periodically allowed to wear his preferred Nike boots. And whenever Franklin complained that the braces and arch supports were painful or ineffective, Dr. Hannula altered treatment by having the outside orthotics provider adjust or replace his braces.

Because Dr. Hannula was "active[ly] monitoring" Franklin's feet, the care was the "antithesis of deliberate indifference." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (citation omitted). Franklin replies that other physicians had prescribed the Nike boots for him. But different views among physicians about reasonable treatments does not establish deliberate indifference or entitle an inmate to his preferred treatment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Likewise, no evidence suggests that Dr. Hannula's care of Franklin's lesions and blisters substantially departed from accepted medical judgment. The records from Franklin's dermatologist confirm that Dr. Hannula reasonably diagnosed that Franklin's skin problem was caused by scratching (not braces) and prescribed steroid cream. *See Norfleet*, 439 F.3d at 396–97 (concluding doctor was not deliberately indifferent when treatment was supported by inmate's medical records).

Similarly no reasonable jury could find that Barker was deliberately indifferent to Franklin's conditions. She too worked with him regularly to adjust his orthotics. *See Harper*, 847 F.3d at 927. And based on Dr. Hannula's judgment that Nike boots were unnecessary, she reasonably refused to approve them. As a nurse and administrator, she could defer to Dr. Hannula's instructions because they posed no obvious and serious risk to Franklin's health. *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012); *see also Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir.2006) (prison health administrator who was also a nurse could defer to doctor's decisions), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Franklin next argues that Dr. Hannula and Barker were negligent under state law, but the district court properly entered summary judgment on this claim as well. To establish medical negligence under Wisconsin law, a plaintiff must prove with expert testimony that defendants violated the standard of reasonable medical care. *Wilson v. Adams*, 901 F.3d 816, 823 (7th Cir. 2018). Franklin did not present expert testimony, or any other evidence, showing that he received unreasonable treatment. Instead, the record shows that two outside experts, Dr. Elliot and a dermatologist, recommended treatments consistent with those of Dr. Hannula and Barker.

Finally, Franklin unpersuasively contests two orders that preceded summary judgment. First, he appears to challenge the dismissal at screening of a nurse practitioner and four members of the prison's administrative staff. But given the sparse allegations in his complaint, the court correctly dismissed these claims. For the nurse practitioner, Franklin alleged only that she said that he "had a lot of time," and prison

staff would not keep treating his flat feet. But Franklin did not allege that she refused to treat him, so he did not state a claim for deliberate indifference or negligence against her. *See Townsend v. Cooper*, 759 F.3d 678, 684, 690 (7th Cir. 2014). Similarly, Franklin alleged that, following the advice of the medical staff that Nike boots were not needed, administrative staff would not allow him to wear Nike boots constantly. Because non-medical staff may rely on the expertise of medical personnel, Franklin's allegations against the administrative staff were insufficient to plead deliberate indifference. *See Arnett v. Webster*, 658 F.3d 742, 755–56 (7th Cir. 2011).

Second, Franklin contends that the district court erred by not recruiting counsel to help him find an expert witness, but the court reasonably denied that request. A district court may recruit counsel for a civil litigant who is not competent to pursue his case given its complexity. *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). Here, the district court appropriately determined that Franklin was reasonably litigating his case. His filings were clear, cited relevant case law, responded to the defendants' proposed factual findings, and included evidence from his medical record. *See Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). Although the court recognized that counsel may have helped Franklin look for an expert, it reasonably rejected recruiting a lawyer for that purpose. *See Romanelli v. Suliene*, 615 F.3d 847, 852 (7th Cir. 2010). Franklin seemed eager to have a recruited lawyer get Dr. Elliot to testify as an outside expert; the doctor had not objected to Nike boots and had written that the braces could have caused skin abrasions. But Dr. Elliot's treatment notes were already in the record. And they did not contradict the doctor who said that Nike boots were not needed and that, because Franklin's abrasions persisted when he stopped wearing braces, Franklin's braces did not cause his abrasions.

AFFIRMED