NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 10, 2022*
Decided March 11, 2022

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1587

| | |
|---|---|
| TRAVIS D. WILLIAMS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 19-C-1159 |
| ZACHARY ELLEFSON, *et al.*, *Defendants-Appellees*. | William C. Griesbach, *Judge*. |

## O R D E R

Travis Williams, a Wisconsin inmate, appeals the entry of summary judgment on his civil rights action against correctional officers and a prison nurse. He alleged that the defendants were deliberately indifferent to his need for care after he took another inmate's medication, and that they applied excessive force by using pepper spray

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

against him. The district court dismissed some of Williams's claims at screening and entered summary judgment for the defendants on the remaining claims. We affirm.

Because Williams challenges the dismissal of one of his claims at screening, *see* 28 U.S.C. § 1915A, we begin with the allegations in his complaint. As he alleges, this case arises out of an incident in which he was given pills meant for an inmate with the same last name and a prescription for the same drug. Williams says he took the pills. Upon realizing the error, he notified the correctional officer who gave him the medication, Zachary Ellefson. Williams also told the sergeant on duty. The sergeant followed up with Ellefson, another officer, and Williams, and told them that a nurse had been called. When Williams developed acid reflux from the drug, the officers offered him antacids and reiterated that they had called a nurse.

Williams alleges how events spiraled from there. He complained that he was bleeding when he regurgitated his food and there was blood in his stool. He protested the absence of care by blocking his cell-door window with an envelope and turning off his light. A supervising officer, Bradley Fedie, told him to uncover the window and then pepper sprayed him in his cell, despite Williams's medical restriction that he not be exposed to incapacitating agents like pepper spray.

Williams also describes problems that soon occurred as he was being transported to a holding cell. Fedie permitted officers to handcuff Williams and transport him down a hallway on foot, even though Williams had medical restrictions for soft handcuffs and a walker. Once at the holding cell, Williams says he developed severe stomach pain from the medication, but for hours the officers refused to call for medical help. When a nurse, Jolinda Waterman, eventually saw Williams, he says she offered only one antacid tablet—which he knew would not help him—and refused to examine him. He says he filed grievances about these events, but the examiner denied them without an investigation.

At screening, the district court dismissed several of Williams's claims. As relevant to this appeal, the court concluded that Williams failed to state deliberate-indifference claims against Ellefson and the other officers who played a role in dispensing the wrong medication, managing the events that soon ensued, and providing antacids to address his symptoms. But the court allowed Williams to proceed on four other claims: that (1) Fedie violated Williams's Eighth Amendment rights by pepper spraying him and disregarding his need for soft handcuffs and a walker; (2) the officers who refused to call a nurse when Williams's symptoms worsened were

deliberately indifferent to his need for treatment; (3) the nurse, Waterman, provided delayed and inadequate care; and (4) the grievance examiner was deliberately indifferent to Williams's condition by failing to investigate his grievances.

After discovery, the defendants moved for summary judgment. The evidence at this stage—which we view in Williams's favor, *see Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021)—fills out the picture of what happened after Williams took the wrong pills. First, soon after that mix up, an officer contacted the on-call nurse, Waterman, who decided not to order immediate care, given the absence of side effects and the fact that Williams had a prescription for the same drug. Williams, not believing that a nurse was called and insisting that he be seen for his acid reflux and chest pain, obscured his cell's window in protest and refused to uncover it until a nurse was called. He also said he would spit blood at an officer. Fedie, the supervising officer, then briefly pepper sprayed Williams in his cell—in disregard of Williams's medical restriction that he not be subjected to pepper spray.

Because his cell had been pepper sprayed, officers prepared to move Williams to a new cell. In doing so, they disregarded two of Williams's additional medical restrictions. First, despite a restriction that he be restrained only with soft handcuffs (because he could not reach his arms behind his back), the officers used two sets of regular cuffs that had been linked together. The officers said that no soft cuffs were available, and they introduced video evidence showing that the two linked cuffs provided enough length so that Williams's arms could hang nearly straight down. The officers also disregarded a restriction that a walker be made available to Williams when they escorted him on foot to the cell.

The officers then had Williams carry out a self-strip search inside the holding cell. During this search, Williams spewed expletives and threats at the officers. Fedie placed Williams on a heightened security status, confining him to his cell and having officers perform periodic "wellness checks" to ensure his safety. Williams's chest and stomach pains worsened, however, and at one point he passed out (the duration of the episode is not reflected in the record). When he regained consciousness, he discovered that he had lost control of his bowels and was covered in his own filth; he tried to get the officers' attention by throwing feces out of his cell.

Two hours later, Williams was taken off the heightened security status and seen by Waterman, who had come to the prison to treat him. She examined him, took his vitals, and offered him antacids and acetophenone.

The district court entered summary judgment for the defendants. Beginning with Fedie, the court ruled that no reasonable jury could conclude he applied excessive force by using a short burst of pepper spray to regain control over Williams, who was refusing to comply with simple orders. Nor could a jury conclude that any defendant was deliberately indifferent to Williams's serious health conditions when they handcuffed him and forced him to walk to the holding cell. The court explained that the video of Williams's escort contradicted his assertions that the officers treated him roughly or subjected him to pain or discomfort. With regard to his claim that Ellefson and other officers disregarded his medical needs after he passed out in the holding cell, no reasonable jury could so conclude, the court explained, because these officers had no indication Williams needed medical care. Nor could Nurse Waterman be considered indifferent, the court added, because she examined Williams and gave him medicine as soon as he was taken off heightened security status. Finally, as for the claim against the grievance examiner, the court ruled that Williams merely disagreed with her evaluations, and such disagreements are insufficient to state a constitutional claim.

On appeal, Williams first takes aim at the district court's screening order and contests the dismissal of his claim that Ellefson and the officers who were present when he took the wrong medication acted with deliberate indifference by ignoring his acid reflux and refusing to call a nurse. But this argument mischaracterizes the complaint, which—as the district court rightly observed—recounts how the sergeant talked to the responsible officers after the incident, called a nurse, and provided antacids. These alleged actions may not have been the steps Williams says he preferred (he wanted medicinal charcoal to coat his stomach and to be taken to the emergency room), but they do not reflect a disregard toward his serious medical needs, as is required to state a deliberate indifference claim. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Williams also raises a series of challenges to the entry of summary judgment. First, regarding his claim of excessive force against Fedie, Williams contends that the court ignored evidence that Fedie knew about and disregarded his medical restrictions. Williams insists, for instance, that Fedie ordered that he be pepper sprayed despite knowing that he had a medical restriction against its use. But the record contains no evidence that Fedie knew about this restriction. Moreover, officers do not violate the Eighth Amendment when they use force "in a good faith effort to maintain or restore discipline." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The record shows that Fedie ordered the spray after

Williams covered his cell window, defied orders to uncover it, and—as far as Fedie knew—threatened to spit blood on an officer.

As for his claim that Fedie and the officers acted with deliberate indifference by handcuffing him and denying him a walker, Williams argues that he identified evidence—namely, the prison video of the encounter—proving that the officers knew about his restrictions. In this video, an officer is overheard asking whether anyone has soft cuffs for Williams. Even if the officers knew about Williams's restrictions, however, no reasonable jury could conclude that the officers were indifferent to Williams's need for soft handcuffs and a walker. As the court explained, the video evidence shows that the officers accounted for his inability to put his arms behind his back by linking two sets of handcuffs, a step that created enough length for Williams's arms to hang almost to his side. The video also showed that the officers held onto Williams's arms and allowed him to set the pace as they walked slowly and steadily to the holding cell. And they permitted him to lean against the wall during the strip search.

With regard to Williams's deliberate-indifference claim against Ellefson and the wellness-check officers who were on his unit when he passed out and woke up in his own filth, Williams argues that the court overlooked evidence—specifically, blood in the feces he threw out of his cell—showing that the officers should have called a nurse to treat him right away. But to defeat summary judgment on this claim, Williams had to produce evidence that these officers "*actually* knew" he had a serious medical need and purposefully disregarded it. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Even if Williams had blood in his stool and needed to be seen by a nurse, the district court correctly concluded that he produced no evidence that any of these officers was aware that he needed urgent medical care. The undisputed record shows that Williams was combative at this time and talking to other staff members (who are not defendants), and that neither Ellefson nor the wellness-check officers saw that he had passed out or was experiencing symptoms that required care.

As for the deliberate-indifference claims against Waterman, Williams contends that he furnished evidence showing that she delayed treating him for hours and, once she did see him, failed to take steps (i.e., perform a stool sample or send him to a hospital) that, he believes, would have confirmed the harmful effects of the medication. But as the court rightly ruled, no jury could conclude that she was deliberately indifferent to his condition. Her initial determination that Williams did not need treatment for the medical mix-up—because he had a prescription for the same pills and had yet experienced no side effects—was rooted in professional judgment and cannot

show deliberate indifference. *See Petties*, 836 F.3d at 729. Nor does the evidence reflect that she responded indifferently to Williams's subsequent reports that he was experiencing chest and stomach pains: she went to the prison to examine him in person, waited more than two hours for him to be taken off security status so she could treat him, checked his vitals, assessed his condition, and offered him medication. Williams may have wanted Waterman to do more, but the Eighth Amendment does not entitle him to dictate terms of care. *See Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017).

Finally, regarding his claims against the grievance examiner, Williams argues that the court ignored evidence that she denied his filings without an investigation. But this argument lacks support in the record. As the court stated, the examiner rejected the grievances after receiving assurances from the health unit that Williams had received care, and a non-medical defendant in such circumstances is entitled to rely on the expertise of medical professionals. *Arnett v. Webster*, 658 F.3d 742, 755–56 (7th Cir. 2011).

We have considered Williams's other arguments—specifically, that the defendants should be sanctioned for destroying evidence and giving false testimony, and that Williams should be permitted to garnish their wages—and none has merit.

AFFIRMED