In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2666

JUAN MCGEE,

*Plaintiff-Appellant,*

*v.*

CAROL L. ADAMS, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 09-3187 — **Harold A. Baker**, *Judge.*

ARGUED DECEMBER 4, 2012 — DECIDED AUGUST 1, 2013

Before BAUER and HAMILTON, *Circuit Judges,* and THARP,
*District Judge.*[*]

THARP, *District Judge.* Juan McGee, a civil detainee at the
Illinois Department of Human Services' Treatment and
Detention Facility at Rushville ("Rushville"), brought an

[*] Of the United States District Court for the Northern District of Illinois,
sitting by designation.

action under 42 U.S.C. § 1983 alleging that twenty-three[1] state officials, employees, and private medical professionals were deliberately indifferent to his medical needs. McGee alleges that the defendants violated his rights under the Eighth and Fourteenth Amendments by requiring him to wear leg irons on his swollen and possibly cancerous legs whenever he was transported from the Rushville facility. The district court granted the defendants' motions for summary judgment, and McGee appealed. We affirm.

## I.

McGee was convicted of rape, home invasion, aggravated battery, and burglary, and was incarcerated in Illinois Department of Corrections facilities from 1980 until 2005. In 2005, pursuant to the Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq.*, he was placed in Rushville. In 2001, while he was still serving his criminal sentence, McGee was diagnosed with liposarcoma cancer and underwent surgery to remove a cancerous tumor and adjacent muscle tissue in his right thigh. Since that time he has undergone extensive treatment and numerous biopsies and other procedures to prevent and/or detect the possible recurrence of the cancer. McGee alleges that he suffers from edema (which causes swelling) and "neuropathic pain" (pain induced by normally non-painful external stimuli) in his legs as a result of the cancer treatments he has undergone (though, so far as the record reflects, McGee has had surgery

---

[1] In the district court, McGee voluntarily dismissed his claims against four of the original defendants, and he does not appeal the district court's order granting a fifth defendant's motion to dismiss. The remaining eighteen defendants are appellees in this proceeding.

only to remove a tumor from his right thigh, he has had biopsies on both legs).

Rushville has a policy, authorized by 59 Ill. Admin. Code § 299.350(d)(2), of requiring detainees who are transported outside of the facility to wear metal leg irons. Defendant Eugene McAdory is the security director at Rushville, and he alone has authority (absent a medical order) to exempt a detainee from the leg shackle policy and to authorize leather leg restraints as an alternative. McAdory never issued any order exempting McGee from wearing metal leg restraints.

While detained in Rushville, McGee was treated by at least two doctors associated with the institution: Dr. Michael Bednarz, Rushville's medical director, and Dr. Hughes Lochard, a privately-employed doctor who served as the Rushville detainee doctor and who regularly examined McGee. Both are defendants. McGee complained several times to Dr. Lochard about being required to wear metal leg restraints, but Dr. Lochard informed McGee that he could not override the Rushville security policy that detainees were required to wear leg irons when transported outside the facility. Only Dr. Bednarz, Rushville's medical director, had that authority.

On January 15, 2009, Drs. Bednarz and Lochard and several nurses, including defendant Mull, attended a meeting with McGee regarding his medical needs. One of the topics of discussion was McGee's request to Dr. Bednarz for an order stating that he should not be secured in leg irons when transferred outside the facility. According to McGee, Dr. Bednarz stated that he understood that cancer was causing McGee pain in his legs and that shackles should not be on his legs. A week after the meeting, Dr. Bednarz

examined McGee, noted that it was difficult for him to wear the leg restraints, and made an entry saying that he would discuss something—presumably the leg restraints—with security. But Dr. Bednarz did not thereafter issue a medical order requiring security to stop using metal leg restraints, and in the course of this litigation he executed an affidavit stating that "at no time … were ankle shackles medically contraindicated" and that he "saw no medical reason [McGee] would need to avoid the use of shackles on his ankles."

McGee describes a number of specific occasions when security personnel transported him from Rushville in leg irons, alleging causing him severe pain and swelling in his legs. McGee underwent surgery on February 12, 2008, to biopsy nodules from the lower portions of both legs. Two days later, on February 14, 2008, McGee was taken by defendants Dougherty and Mercer, who are security therapist aids (*i.e.*, guards), to Lake County to appear in court on a civil matter. Before leaving Rushville, McGee was secured in metal leg restraints as usual. He complained, to no avail, to Dougherty, Mercer, and Defendant Volk, the shift commander on duty at Rushville, that the leg restraints were too tight and were causing him pain because of his recent surgery and his edema which caused swelling in his legs. When he arrived in Lake County, McGee asked Dougherty for a wheelchair to travel the two blocks to the courtroom. Dougherty refused his request, and told McGee that she "would not be pushing any rapist anywhere." Dougherty and Mercer then pulled McGee forward under his arms, forcing him to walk at a fast pace. After McGee's court hearing, Dougherty and Mercer again denied McGee's request for a wheelchair to return to the vehicle, and McGee

was forced to walk back to the van. When he arrived back at Rushville, McGee's legs were swollen, but Dougherty refused to allow him to go to the Health Care Unit immediately. Twenty minutes later, after Dougherty's shift had ended, McGee was seen in the Health Care Unit, where it was noted that his legs were quite swollen.

On April 22, 2008, McGee was transported to an outside medical facility, this time by defendants Iseminger and Lay, who again required McGee to wear metal leg restraints. In the course of attempting to climb into the vehicle, McGee, who was wearing hand and leg restraints and a waist chain, fell off of a milk crate and cut his ankle. McGee alleges that neither Iseminger nor Lay attempted to help him step up onto the crate and into the van. McGee was taken (per facility policy when residents returned from medical writs) to the facility healthcare unit, where a nurse wrapped his ankle but determined that the cut did not require stiches.

Several subsequent trips followed a similar pattern. McGee next travelled to an outside medical facility on June 16, 2008; defendants Clark and Wallace were responsible for his transportation. Clark put metal leg restraints on McGee, and after McGee claimed that they were too tight, Clark threatened not to take him to the medical facility. McGee then accepted the leg restraints. After arriving at the medical facility, McGee showed Wallace his legs and complained that the restraints were digging into his skin. Wallace asked Clark whether he should loosen the restraints, but Clark refused. McGee also complained about the shackles to the physician who treated him, but that physician did not instruct Wallace or Clark to remove or loosen the leg irons. Wallace and Clark returned McGee to the van in a

wheelchair at the conclusion of the appointment, and upon returning to Rushville, the nurse who saw McGee in the healthcare unit noted that McGee had only slight swelling in his left leg and had made no complaint as to his right.

Eight months later, McGee required another MRI on his leg, so on February 13, 2009, defendants Baer and Davidson applied metal leg restraints to McGee in preparation for a trip to an outside hospital. McGee complained to Baer and to appellee Biermann that his metal leg restraints were too tight, but they did not remove them. When they arrived at the hospital, Baer parked at the far end of the parking lot and refused to allow McGee a wheelchair, causing McGee to have to walk across the parking lot to reach the hospital. After McGee's appointment, Baer drove the van to the entrance of the hospital so that McGee would not have to walk across the parking lot a second time.

McGee underwent a second biopsy on his leg on April 28, 2009. Prior to leaving Rushville, he complained to defendant Williams about his metal leg restraints and requested leather restraints. Williams checked McGee's legs, but required him to continue wearing metal restraints.

McGee made several more medical trips outside of Rushville (on at least May 11, 2009; July 14, 2009; and July 28, 2009), but he does not allege whether he was required to wear metal leg restraints on those occasions, and does not claim that his rights were violated on any of those trips.

## II.

We review the district court's grant of summary judgment *de novo*, construing the facts in favor of McGee, the non-moving party. *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919,

922 (7th Cir. 2012). Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Claims concerning the conditions of confinement of civil detainees are assessed under the due process clause of the Fourteenth Amendment. *See West v. Schwebke*, 333 F.3d 745, 747–48 (7th Cir. 2003). Civil detainees "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). But the Supreme Court has not determined how much additional protection civil detainees are entitled to beyond the protections afforded by the Eighth Amendment bar on cruel and unusual punishment. For claims of deliberate indifference, like this one, this Court has previously "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n. 2 (7th Cir. 1999)).

Courts interpret the Eighth Amendment, as incorporated through the Fourteenth Amendment, to impose a duty on states "to provide adequate medical care to incarcerated individuals." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Boyce v. Moore*, 314 F.3d 884, 888–89 (7th Cir. 2002)). Officials violate this duty if they "display deliberate indifference to serious medical needs of prisoners." *Id*. at 1010 (internal quotation omitted). To successfully appeal the district court's entry of summary judgment to the

defendants on his deliberate indifference claim, McGee must satisfy two elements, one objective and one subjective. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). To satisfy the objective element, McGee must "present evidence supporting the conclusion that he had an objectively serious medical need." *Id.* (internal quotation omitted). "A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)). As for the subjective element, McGee must show that the defendants were aware of his serious medical need and were deliberately indifferent to it. *King*, 680 F.3d at 1018. "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1988)). To establish deliberate indifference, McGee must meet "essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* Even gross negligence is insufficient to impose constitutional liability on the appellees. *Id.*

In this case, no one disputes that McGee's cancer, course of treatment, and the resulting condition of his legs, including his edema, constitute a serious medical condition requiring ongoing attention. It is important to understand, however, that this case does not present questions about the adequacy of the cancer treatment McGee has received. McGee advances no claim that the cancer treatment he has received has been deficient, much less that the problem has been ignored, and since cancer survival is generally

measured against a five-year standard, *see* National Cancer Institute, *SEER Stat Fact Sheets: Soft Tissue including Heart*, http://seer.cancer.gov/statfacts/html/soft.html (describing five-year survival rate for cancers of the soft tissue), McGee's post-operative longevity would likely belie any claim targeting the adequacy of the treatment he has received. Rather, the medical "need" that McGee claims in this case is not a need for "treatment" per se, but a need for ongoing evaluation of, and accommodation for, the condition of his legs—specifically, the swelling, edema, and pain he experiences—resulting from the cancer and treatment that he has received. The defendants do not argue that the condition of McGee's legs does not warrant ongoing medical evaluation, so we will not tarry longer on the issue other than to note that identification of the "need" at issue is critical to evaluating the subjective component of the deliberate indifference analysis. Given that there was a need for ongoing evaluation of McGee's legs in light of the toll taken by cancer and cancer treatments, the question is not whether the defendants were deliberately indifferent to McGee's cancer but whether they were deliberately indifferent to the related, but distinct, problems about which McGee complained. We hold that McGee has not adduced evidence sufficient to create a jury issue as to that question.

Claims of deliberate indifference to medical needs are examined differently depending on whether the defendants in question are medical professionals or lay persons. As medical professionals, Drs. Bednarz and Lochard and nurse Mull (the "Medical Professional Defendants") are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under [the] circumstances" at issue. *Elyea*, 631 F.3d at 857 (quoting

*Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). When a medical professional acts in his professional capacity, he "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) ("neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference").

On the record he has adduced, McGee cannot meet the high deliberate indifference standard against the Medical Professional Defendants. The record establishes that McGee's complaints were not ignored; rather, Drs. Bednarz and Lochard both examined McGee's legs and discussed the metal leg restraints with him. Further, the defendants held a special staffing meeting specifically to review and discuss McGee's complaints, and all of the Medical Professional Defendants attended, along with other defendants. McGee was also seen and evaluated regularly by medical personnel in the Rushville healthcare unit upon his return from his frequent medical writs outside the facility. This sort of meaningful and ongoing assessment of a patient's condition is the antithesis of "deliberate indifference."

McGee's argument as to the Medical Professional Defendants is not that they ignored his condition but that they *agreed* with him that leg shackles should not be used but

subordinated their medical judgment to the security concerns of the Rushville staff. There is no evidentiary basis for that argument. Dr. Bednarz submitted an affidavit flatly stating that "[a]t no time while [McGee] was at the TDF were ankle shackles medically contraindicated … . I examined him myself on January 22, 2009, and saw no medical reason he would need to avoid the use of shackles on his ankles." Bednarz Aff. (A-208–09) ¶ 5.

The only evidence McGee has submitted to show that the Medical Professional Defendants incorrectly refused to exempt him from wearing metal shackles is Dr. Bednarz's alleged statement—made prior to his examination of McGee's legs—that "leg restraints shouldn't be on your legs and I will talk to security." That conclusory remark fails to create a question of fact as to whether requiring the metal leg restraints was a substantial departure from accepted medical judgment. Even if Bednarz made the statement, the uncontradicted evidence is that he took a different view after examining McGee. And notably, despite visiting several outside physicians during the relevant period, McGee fails to introduce any other medical evidence or opinion from any doctor indicating that he should not wear metal leg restraints. In fact, the record shows that McGee was examined by an (unnamed) podiatrist, and the "examination revealed no damage to [McGee's] ankle due to use of leg shackel (sic)." McGee's testimony that he was not required to wear metal leg restraints in 2004 and 2010 at two correctional facilities does not show that the shackles were medically inappropriate, especially during the 2008–2009 time frame at issue here. Simply put, McGee has no evidence (other than his own opinion) of any medical need to exempt him from Rushville's standard use of metal leg shackles.

McGee has therefore failed to submit sufficient evidence to show that the Medical Professional Defendants' actions were "blatantly inappropriate" or "a substantial departure from accepted professional judgment." *Greeno*, 414 F.3d at 654; *Elyea*, 631 F.3d at 857. The district court's conclusion that "a rational juror could not find that leg shackles were contraindicated for the plaintiff's condition" was correct.

Given the evidence that no medical professional concluded that McGee's condition warranted an exemption from wearing leg irons, it is not surprising that McGee has also failed to present any evidence, other than his own opinion, that Rushville's security personnel somehow overruled the Medical Professional Defendants' medical opinions. Despite the special meeting and the doctors' prior and subsequent examinations, none of the Medical Professional Defendants ever came to the medical conclusion that McGee's condition required a waiver of the security requirement that he wear metal leg restraints when transported outside of Rushville. Dr. Lochard told McGee that he did not have the authority to overrule the security staff, but Dr. Bednarz did, and there is no evidence that Dr. Lochard believed that it was necessary to overrule the security staff in any event. There is no evidence that would allow a jury to find that the Medical Professional Defendants' actions were "so far afield of accepted professional standards as to raise the inference that [they] were] not actually based on a medical judgment," *Duckworth*, 532 F.3d at 680 (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)), rather than security concerns.

The non-medical professional defendants, in turn, were entitled to rely on the medical professionals' determination

that McGee could wear metal leg restraints. *See King*, 680 F.3d at 1018 (officers are "entitled to defer to the judgment of jail health professionals" so long as they do not ignore a detainee); *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants … can rely on the expertise of medical personnel."); *Knight v. Wiseman*, 590 F.3d 458, 465 (7th Cir. 2009) (officers were entitled to rely on fact that prisoner had no medical work restrictions on his record to conclude that he could work without injury). "The only exception to this rule is that nonmedical officers may be found deliberately indifferent if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *King*, 680 F.3d at 1018 (quoting *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008)).

McGee's allegations focus on the requirement that he wear metal leg restraints when travelling outside of Rushville. Defendant McAdory was the only individual with the authority to exempt detainees from wearing metal leg restraints without a medical order, and McGee presents nothing besides conjecture to establish that he acted with deliberate indifference. According to McGee, McAdory spoke with McGee about the medical issues he had with his legs, examined McGee's legs, and spoke with Dr. Bednarz to determine the full extent of McGee's medical issues. McGee then conjectures, with no proof whatsoever, that Dr. Bednarz allowed McAdory's concerns about security to overrule his medical judgment that McGee should not wear metal leg shackles. McGee infers this solely on the basis of Dr. Bednarz's alleged January 15, 2009 statement that McGee should not wear metal leg restraints, and on Dr. Bednarz's

subsequent refusal to exempt McGee from wearing the restraints.

But the only evidence in the record relating to the substance of McAdory's conversation with Dr. Bednarz indicates that McAdory told the doctor that he "would not change Mr. McGee's status regarding the leg iron requirement *without a medical order*" (emphasis supplied), because, according to McAdory, McGee had previously escaped from a pair of handcuffs. McAdory Aff. (A-215) ¶ 5. And McAdory "did not ever receive an order from medical staff that Mr. McGee should be excused from complying with the leg iron policy." *Id.* ¶ 6. Even when viewed in the light most favorable to McGee, this evidence shows that McAdory was willing to displace Rushville's security policy in favor of McGee's medical needs if a doctor believed it was necessary. None did—and McAdory was entitled to rely on the Medical Professional Defendants' decision not to order that McGee be exempt from wearing metal leg restraints. McGee's argument—that McAdory somehow overruled the Medical Professional Defendants or prohibited them from ordering an exemption for McGee—has no evidentiary basis in the record. *See Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("[U]ncorroborated, self-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment … . But mere conclusory allegations do not constitute evidence.") (internal citations omitted). Therefore, because the record shows that McAdory reasonably relied on the medical professionals' determinations, he was not deliberately indifferent to McGee's needs, and the trial court correctly granted summary judgment in his favor.

Other than McAdory, the defendants who were involved with McGee's security at Rushville (the "Security Defendants")[2] did not have the authority to exempt McGee from the policy of wearing shackles, but McGee argues that they should have declined to use the shackles in several particular instances, and/or raised the issue with McAdory. However, like McAdory, these Security Defendants were justified in relying on the medical professionals' decisions not to exempt McGee from the policy. Further, most of the occasions when McGee was transported involved the provision of medical treatment, but the record is devoid of any suggestion that any outside medical personnel providing treatment on any of those occasions had ever suggested that leg irons should not be used on McGee based on the conditions of his legs. Therefore, the other Security Defendants were also entitled to summary judgment to the extent that McGee claimed that they were deliberately indifferent by requiring him to wear metal leg restraints.

McGee also alleges, however, that several of the Security Defendants were deliberately indifferent towards substantial risks of serious harm beyond merely the harm McGee allegedly suffered from having to wear shackles. McGee argues that on February 14, 2008, defendants Dougherty and Mercer refused to provide him a wheelchair, which caused him to have to walk a total of four city blocks two days after a biopsy. He similarly alleges that on February 13, 2009, defendants Baer and Davidson parked at the far end of the hospital parking lot and forced him to walk further than was

---

[2] In addition to McAdory, the Security Defendants include appellees Iseminger, Lay, Mercer, Wallace, Clark, Davidson, Baer, Volk, Biermann, Williams, and Dougherty.

necessary. But McGee has not identified any "substantial risk of serious harm" that these defendants knew of and disregarded in requiring him to walk from where their vehicles were parked. There is no evidence that any physician had prescribed a wheelchair for McGee or otherwise suggested that any special accommodation should have been made for him, and (apart from an exemption from leg irons) McGee does not argue that other accommodations were medically indicated. Nor is there record evidence that the vans could have been parked closer to the facilities in question, and the guards cannot be faulted for deciding not to separate from one another as would have been necessary had they dropped McGee off at an entrance. McGee testified that his legs became swollen due to the walking, but he apparently suffered no other injury. Swollen legs are not a "serious harm" here, where as McGee testified, his legs are often swollen and "the least amount of pressure" put on his legs causes them to "swell[] up real big."

McGee also claims that defendants Iseminger and Lay were deliberately indifferent by requiring him to climb into a van by stepping onto a milk crate (which was Rushville's standard procedure) without assistance while he was shackled, and that he fell off of the milk crate and sustained a minor cut on his ankle. This incident does not provide any basis for a claim that any of the defendants were deliberately indifferent to any substantial risk of serious harm.

Finally, McGee's claims against defendants Phillips and Thomas, the individuals who ruled against McGee on the institutional grievances he filed with respect to these incidents, also fail as a matter of law. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on

an administrative complaint does not cause or contribute to the [constitutional] violation."). McGee alleges that these defendants did more than simply deny his grievances, but at most Phillips and Thomas merely refused to allow McGee an exemption from the leg shackle policy, conduct which we have already determined did not potentially constitute a constitutional violation. McGee also claims that defendant Adams, the Secretary of the Department of Human Services, is personally liable for knowing about the other defendants' conduct and doing nothing to stop it. But—leaving aside McGee's inability to show that Adams actually knew about his leg shackle complaints—because the underlying conduct did not give rise to any valid deliberate indifference claim, McGee cannot maintain a claim against Adams for failing to prevent that conduct. Summary judgment was therefore also appropriately entered in favor of defendants Phillips, Thomas, and Adams.

### III.

Because none of the defendants were deliberately indifferent to McGee's serious medical condition or to any substantial risk of serious harm, summary judgment was proper.

AFFIRMED.