**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2019[*]
Decided September 20, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1619

| | |
|---|---|
| JOHN H. BALSEWICZ, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-CV-360-JPS |
| | |
| CRAIG BLUMER, *et al.*, | J. P. Stadtmueller, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

John Balsewicz, also known as Melissa, is a transgender prisoner who has been diagnosed with gender dysphoria and depression. She sued various prison healthcare providers under 42 U.S.C. § 1983, alleging that they unconstitutionally delayed hormone treatment, inadequately addressed her suicidal ideation, and retaliated against her for complaining about sexual harassment. We affirm the district court's entry of summary judgment for the defendants.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We review the evidence in the light most favorable to Balsewicz. *See Rosario v. Brawn*, 670 F.3d 816, 820 (7th Cir. 2012). In April 2016, while housed at the Waupun Correctional Institution, Balsewicz underwent an assessment for gender dysphoria. A doctor should have forwarded the results to the Wisconsin Department of Corrections's Transgender Committee for consideration of the proper accommodations and treatment, but he failed to do so.

A short time later, Balsewicz was transferred to the Wisconsin Resource Center to receive mental health treatment. She reported that she thought constantly about suicide and had been depressed her whole life; she was diagnosed with major depressive disorder and borderline personality disorder. The Resource Center assigned her to a depression support group and to Dialectical Behavioral Therapy ("DBT")— specialized group treatment for inmates with personality disorders who have thoughts of self-harm.

In September, Balsewicz asked about the status of her gender dysphoria assessment. A Resource Center doctor discovered that her assessment had not been forwarded to the Committee and immediately sent it. The Committee determined that Balsewicz was an appropriate candidate to see the gender dysphoria consultant. An appointment was scheduled for the next available opening, roughly five months later.

Over time, members of Balsewicz's DBT treatment team observed that she was more focused on her gender dysphoria than on being treated for her thoughts of self-harm—the reason for which she was placed in the DBT group. Balsewicz voiced her desire to be treated for her gender dysphoria and stated that her depression stemmed from not being treated. In early December, her treatment team agreed to discontinue the DBT; she remained in group therapy for her depression. Throughout this time, Balsewicz reported that, while she still had thoughts of self-harm and was depressed, she had no intent to attempt self-harm.

Later in December, however, Balsewicz was placed in clinical observation after she told a social worker that she intended to kill herself by overdosing on pills or cutting her wrists. Inmates under observation are checked every fifteen minutes, and cameras in the cells assist with monitoring. Additionally, inmates are allowed only property that staff believe will not pose a safety risk. At first, Balsewicz was allowed only a security smock, mattress, and safety blanket. After treatment staff met with her, assessed her condition, and determined that she was calm and cooperative, they allowed her to wear her regular clothing. Two days later, however, Balsewicz tried to

hang herself by making a ligature out of her clothes. She was sent to the hospital for evaluation, deemed stable, and returned to observation.

A few days later, a doctor and a social worker met with Balsewicz for therapy. At the end of the session, Balsewicz grabbed scissors from a table. She made no attempt to harm anyone. Instead, the staff believed that she was trying to be helpful by letting them know that there was a possible weapon sitting out. But given Balsewicz's history of violence and her decision to grab the scissors, staff also reported their concern that she had made an indirect threat. So, they issued her a conduct report and moved her to the high management unit for more monitoring. The next day, Balsewicz used the lens of her eyeglasses to cut her arm; staff assessed her and put her back on observation. A week later, she called for help and, when a technician arrived, she swallowed a handful of lithium pills that she had been hoarding. Staff sent her to the hospital, where tests showed that her lithium levels were elevated but still within the normal range.

Balsewicz filed a grievance in January, alleging that, at a therapy session back in early November, a social worker had sexually harassed her by initiating sexually explicit conversations and providing her with a pair of women's underwear. She stated that she had immediately reported the incident but was not taken seriously. The Resource Center investigated her claims and found that no staff member had committed a sexual harassment violation.

Balsewicz eventually saw the gender dysphoria consultant in February 2017. The consultant recommended against hormone treatment due to Balsewicz's psychological instability. The consultant reevaluated Balsewicz about a year later and determined that she could start hormone treatment, which began in September 2018.

In the meantime, Balsewicz had sued numerous doctors and members of her mental health treatment team, alleging that they had been deliberately indifferent to her gender dysphoria and risk of suicide. She further claimed that the defendants removed her from treatment in retaliation for her oral complaint about sexual harassment. The district court granted the defendants' motion for summary judgment.

On appeal, Balsewicz first contends that she submitted sufficient evidence to create a factual issue about whether members of her treatment team were indifferent to her risk of suicide by allowing her to have her regular clothing while on observation. But nothing in the record suggests that any defendant intentionally or recklessly disregarded her risk of suicide, such as by failing to take reasonable steps to prevent her

suicide attempts. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rosario*, 670 F.3d at 821–22. Here, the defendants began frequent monitoring of Balsewicz from the moment that she threatened to attempt suicide. She was placed on observation, checked every fifteen minutes, and given limited access to clothing and other items. Although the defendants allowed her to wear clothes that she then used to try to hang herself, that decision was made only after the treatment team assessed her and deemed it safe. They were wrong, but a reasonable jury could not conclude that allowing Balsewicz to wear her regular clothes, while still under observation, was such a departure from professional judgment that it constituted deliberate indifference. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

We reach the same conclusion about Balsewicz's two other suicide attempts. Balsewicz had told her treatment team that she could attempt suicide by cutting her wrists or overdosing on pills. But allowing her to keep her glasses while in the high management unit demonstrates, at worst, negligence; the deliberate-indifference standard presents a higher bar. *See Farmer*, 511 U.S. at 836. Further, the defendants were unaware that Balsewicz was hoarding her lithium pills; she reported that she was taking the pills and that they were improving her mood. Even if the defendants could have done more to ensure that she took her pills every day—her observation cell was searched weekly—deliberate indifference requires more than a showing of negligence. *See Farmer*, 511 U.S. at 836.

As for Balsewicz's argument that the defendants unlawfully delayed her hormonal treatment, the delay did not rise to the level of deliberate indifference. Inexplicable delays in treatment can, in some cases, constitute deliberate indifference. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016) (en banc). Here, there was a five-month delay in forwarding her gender dysphoria assessment to the Committee for consideration. But the doctor responsible attested that he had accidentally overlooked sending the assessment—he had sent another patient's file at the same time. Balsewicz has presented no evidence to contest this. The second doctor attested that he sent the assessment immediately upon discovering it, and Balsewicz has no evidence to support her speculation that he knew about the assessment sooner.

Finally, Balsewicz contends that the district court erred in entering summary judgment for the defendants on her claim that they retaliated against her for her "verbal complaint" of staff misconduct by removing her from DBT treatment a month after her complaint and ignoring her threats of self-harm. But the only evidence of retaliation that Balsewicz presents is what she believes is suspicious timing, which by itself is not

enough to establish retaliatory motive. *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016). She presents no evidence to refute the defendants' stated reasons for their decision to remove her from treatment (her disruptive behavior and a lack of commitment to treatment). And we already have concluded that her risk of suicide was not ignored but handled within a permissible range of professional judgment.

We have considered Balsewicz's remaining arguments, and none has merit.

AFFIRMED