**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2019[*]
Decided November 4, 2019

**Before**

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-1626

| | |
|---|---|
| ERIC D. CONNER, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 17-CV-1388 |
| | |
| SCOTT RUBIN-ASCH, et al., | David E. Jones, |
| *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

Eric Conner, a Wisconsin inmate, sued a prison psychologist and eight correctional officers for retaliation and deliberate indifference because they removed him from clinical observation, despite his threats of self-harm, after he refused to speak with psychological staff. Conner attempted suicide later that day. The district court entered summary judgment for the defendants. Because Conner lacks evidence that any defendant acted with deliberate indifference or a retaliatory motive, we affirm the judgment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

When Conner transferred to the Wisconsin Secure Program Facility in Boscobel in September 2016, he had a long history of threatening suicide and attempting to harm himself (or, possibly, simulating self-harm) while incarcerated. It is undisputed that Conner threatened self-harm in an attempt to obtain a private cell and a facility transfer while at another prison. Conner's first suicide attempt after transferring to WSPF occurred in February 2017. He affixed a bedsheet to his showerhead and wrapped it around his neck. His feet never left the ground, and he sustained no physical injuries. After this incident, prison staff removed Conner from administrative segregation (where he was housed because of his diagnoses of anti-social personality disorder and PTSD) and placed him under clinical observation in the psychological services unit ("PSU"). Clinical observation is a temporary, nonpunitive status for inmates who pose an immediate danger to their own safety or the safety of others due to mental illness. While under observation, Conner refused to speak with PSU staff except to state that he wanted to be transferred to the Wisconsin Resource Center in Oshkosh.

Conner was released from observation in early March after he told a doctor that he was not having thoughts of self-harm. But the next day, he tied a sheet to his neck and climbed a fence in the recreation yard. He climbed down from the fence voluntarily, without sustaining any physical injuries, and PSU staff placed him back on clinical observation. Conner made several additional attempts, or at least simulations, of self-harm while under clinical observation: at various times, he banged his head on his window, placed a breakfast bag over his head, and wrapped his security smock around his neck. Each time, Conner stopped his attempt before prison staff had to intervene, and he did not sustain any injuries from these incidents. PSU staff frequently tried to evaluate Conner's mental state and need for continued observation, but Conner refused to speak with them, or with an outside psychiatrist. He would speak only with security staff.

On April 20, 2017, the prison's supervisory psychologist, Dr. Scott Rubin-Asch, ordered Conner's removal from clinical observation because he had not demonstrated recent suicidality (he last attempted self-harm on April 4), and he was not engaging with PSU staff. Rubin-Asch believed that removing Conner from clinical observation would improve the likelihood that Conner would have constructive dialogue with psychological staff. Within minutes of hearing about this order, Conner told a correctional officer—who told Rubin-Asch—that he would harm himself if he was forced off clinical observation. The doctor attested that it was his professional opinion that Conner's statements were not genuine and were motivated by his desire to remain

where he was. Conner refused to leave his cell, so a team of correctional officers forcibly removed him and placed him back in administrative segregation. Conner made more threats of self-harm during the extraction.

Several hours later, Conner tied his clothing around the showerhead of his cell and around his neck for approximately one minute. When a guard threatened to intervene, Conner voluntarily removed the clothing from his neck, then walked to his cell door to be handcuffed. He did not sustain any injuries, but was placed back under clinical observation.

Conner sued Rubin-Asch and the correctional officers who removed him from his observation cell for their deliberate indifference to his threats of self-harm and suicidal feelings. He also claimed that Rubin-Asch retaliated against him by removing him from observation for refusing to speak to PSU staff. During discovery, Conner moved for spoliation sanctions when he learned prison officials did not download the video of his cell extraction to external media before the camera's memory was taped over. Conner had twice asked the prison's security director, within two months of the extraction, to save the video. The parties both moved for summary judgment, and the district court granted the defendants' motion. The court also denied Conner's motion for spoliation sanctions.

On appeal, Conner maintains that Rubin-Asch violated the Eighth Amendment by removing him from clinical observation despite his threats of self-harm. He further contends that the doctor's medical opinion—that Conner's suicide attempts and threats of self-harm were not genuine—is unreliable since the doctor did not document that opinion in his earlier medical reports. Conner also maintains that the correctional-officer defendants were deliberately indifferent by following Rubin-Asch's order to remove him from observation despite his threats of self-harm.

To survive summary judgment on his deliberate indifference claims, Conner needed evidence from which a reasonable jury could find that the defendants knowingly and unreasonably failed to respond to an objectively serious risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994); *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). When the serious risk at issue is attempted suicide, a defendant acts knowingly and unreasonably if that defendant "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Lisle v. Welborn*, 933 F.3d 705, 716–17 (7th Cir. 2019) (quoting *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)). This requires "more than mere or gross negligence, but less

than purposeful infliction of harm." *Matos v. O'Sullivan*, 335 F.3d 553, 557 (7th Cir. 2003).

Here, a reasonable jury could not find that the defendants intentionally disregarded a known, substantial risk of harm because Rubin-Asch made a reasoned decision that removing Conner from clinical observation was safe and was the best decision for Conner's mental health needs. *See Farmer*, 511 U.S. at 845. After months of closely observing Conner in the PSU, Rubin-Asch concluded that his threats and attempts at self-harm were not genuine, and that Conner did not actually pose a danger to himself. Because Rubin-Asch's decision was based on his professional judgment, it must be afforded deference. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). And, contrary to Conner's assertion that the doctor's opinion was contrived, the record shows that Rubin-Asch had previously expressed concern that Conner wished to remain under clinical observation because he believed it could result in a facility transfer. *See Wilson*, 901 F.3d at 821. The record contains no medical evidence or expert testimony contradicting the doctor's opinion or otherwise demonstrating that his decision was "a substantial departure from accepted professional judgment." *McGee*, 721 F.3d at 481.

And, finally, the correctional-officer defendants who extracted Conner from his cell were entitled to rely on Rubin-Asch's professional opinion that Conner no longer belonged under clinical observation. *Id*. at 483. Indeed, the record shows that no correctional officer had the authority to override PSU staff's judgment about whether any inmate should be on clinical observation.

Conner next argues that the district court erred in concluding that Rubin-Asch did not retaliate against Conner by removing him from clinical-observation status after he refused to speak to PSU staff. The district court determined Conner made a prima facie claim of retaliation, namely: (1) he engaged in a protected activity; (2) he suffered a deprivation likely to deter him from engaging in the protected activity; and (3) his protected activity was a motivating factor in the defendant's decision to retaliate. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018). But the court concluded that Rubin-Asch met his burden of showing that Conner would have been removed from clinical observation even if he had not refused to talk.

Rubin-Asch established that he would have released Conner from observation even if he had cooperated with PSU staff's attempts to evaluate him. *See Hasan v. U.S. Dep't. of Labor*, 400 F.3d 1001, 1005–06 (7th Cir. 2005). Clinical observation is a temporary

restrictive environment for inmates who are a present danger to themselves or others. Rubin-Asch made a professional judgment based on his own observations that Conner was not a current threat to himself, and the record supports that he removed Conner from observation on that basis. Conner offered his own speculation but no evidence to rebut Rubin-Asch's justification or show that it was pretextual. *See id.* at 1006; *see Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012).

Conner last argues that the district court abused its discretion by not sanctioning the defendants for failing to preserve the video of his cell extraction. *See* FED. R. CIV. P. 37(e). A spoliation sanction is proper only when a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Furthermore, a showing of bad faith—like destroying evidence to hide adverse information—is a prerequisite to imposing sanctions for missing evidence. *Id*. Conner presented no evidence that any defendant destroyed the video to hide illicit conduct; he therefore cannot rebut the defendants' attestations that the video was written over (pursuant to normal practices) without first having been downloaded and saved. At most, Conner points to negligence, not bad faith. Therefore, the district court did not abuse its discretion in denying sanctions.

AFFIRMED