In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 23-1220

RICHARD RODGERS,

*Plaintiff-Appellant,*

*v.*

WILLIAM RANKIN, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:20-cv-04121-SLD-JEH — **Sara Darrow**, *Chief Judge.*

———————————

ARGUED NOVEMBER 28, 2023 — DECIDED APRIL 23, 2024

———————————

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff-appellant Richard Rodgers entered the East Moline Correctional Center with a history of scoliosis and back pain that had been treated surgically by implanting steel rods in his back. His back pain persisted during his time in prison. At some point during his imprisonment, the rods in his back broke. The broken hardware went undetected for more than a year after two radiologists

misread his x-rays. Eventually, the jail's primary care physician, defendant-appellee Dr. William Rankin, discovered the broken hardware when he double-checked Rodgers' x-ray images. Dr. Rankin arranged for Rodgers to receive corrective surgery. After that surgery, Rodgers needed another after developing an infection.

After this ordeal, Rodgers sued the radiologists and Dr. Rankin, as well as other defendants not at issue in this appeal. The district court screened Rodgers' complaint under 28 U.S.C. § 1915A and dismissed his Eighth Amendment claims against the radiologists because Rodgers did not state a viable constitutional claim against them. The court allowed Rodgers to proceed against Dr. Rankin but eventually granted summary judgment for him. The court found that Rodgers had not come forward with evidence that would allow a reasonable jury to find that Dr. Rankin had violated the Eighth Amendment by acting with deliberate indifference toward Rodgers' serious medical condition. Rodgers has appealed.

We affirm the judgment of the district court. Regarding the radiologists, the Eighth Amendment requires allegations of more than mere negligence to state a viable claim. Rodgers alleged no more than negligence by the radiologists. As for Dr. Rankin, we agree with the district court that the evidence would not support a reasonable finding that Dr. Rankin acted with deliberate indifference to Rodgers' serious medical condition. In fact, Dr. Rankin deserves the credit for having found the radiologists' errors in reading the x-rays and putting Rodgers on the path to the corrective surgery he needed.

I.  *Factual and Procedural Background*

Richard Rodgers endured scoliosis for years before entering the East Moline Correctional Center. Sometime before his imprisonment, he had metal rods known as Harrington rods implanted in his back to straighten his spine. Twice before his imprisonment, those rods had broken, requiring further surgery.

Rodgers' back problems persisted at the prison. In December 2016, Rodgers met with Dr. William Rankin, the physician for the prison, to discuss his back pain and other ailments. Rodgers told Dr. Rankin that he had Harrington rods in his back and that they had broken previously. Dr. Rankin had never before treated a patient with Harrington rods. After noting that Rodgers had some tenderness along his spine, Dr. Rankin gave him ibuprofen and Robaxin, a muscle relaxer. Dr. Rankin also ordered a low-bunk permit and an extra blanket to reduce stress on Rodgers' back.

Rodgers' medical records show that he next complained of back pain in May 2018. Rodgers and Dr. Rankin met again for an appointment that month. Rodgers complained that he had been feeling "sharp, throbbing, and constant pain" at the base of his neck for a couple of months. Dr. Rankin ordered x-rays and a follow-up appointment.

The x-rays came back a few days later. Dr. Naveed Yousuf, the radiologist who examined Rodgers' x-rays, reported that Rodgers' hardware "appears to be intact and in satisfactory alignment." Despite that promising report, Dr. Rankin decided to increase Rodgers' Robaxin dosage because he was still experiencing back pain.

Rodgers' medical records do not reflect that he complained of back pain again until December 2018, when he reported to a nurse that he had "nervy" back pain that "comes and goes." Dr. Rankin added a prescription for gabapentin to Rodgers' treatment regimen of Ultram, Robaxin, and Tylenol.

In September 2019, Rodgers complained of "shooting" pain, saying it felt like there was "something digging" into his back. Dr. Rankin ordered a second round of x-rays. Again, the x-ray report—this time signed by Dr. Jonathan Foss—said that the "hardware appears intact."

This time, however, Dr. Rankin reviewed the x-rays himself. He thought the Harrington rods appeared to be broken. Dr. Rankin asked Dr. Foss to look at the x-rays again. Dr. Foss did so and revised his report. He agreed that the Harrington rods appeared fractured. Dr. Rankin later acknowledged that, upon further review, Rodgers' first x-ray from May 2018 also showed a broken Harrington rod, though Dr. Rankin at that time had accepted Dr. Yousuf's report that they were intact.

Having determined that the Harrington rods were broken, Dr. Rankin sought out specialists to treat the issue. He first referred Rodgers to an orthopedic specialist, but that specialist was unable to provide the treatment Rodgers needed. Dr. Rankin next referred Rodgers to a neurosurgeon. Dr. Rankin also ordered a CT scan and in the meantime increased Rodgers' Robaxin dosage. Eventually, in March 2020, Rodgers met with the neurosurgeon.

The neurosurgeon recommended surgery to replace the Harrington rods. Rodgers received care in the prison infirmary until the surgery finally occurred in June 2020, in the midst of the COVID-19 pandemic. After the surgery, Rodgers

developed an infection while staying in the prison infirmary to recover. He underwent another procedure to treat the infection. Dr. Rankin monitored Rodgers' condition throughout this time by ordering monthly labs and other tests. In December 2021, Rodgers had yet another surgery to replace his Harrington rods, this time with a material less prone to infection.

Believing that his medical care had fallen beneath constitutional standards, Rodgers filed this suit against Dr. Rankin, Dr. Yousuf, Dr. Foss, and the prison's corporate healthcare provider, Wexford Health Sources, Inc. Pursuant to 28 U.S.C. § 1915A, the district court screened Rodgers' complaint. The court construed the complaint as alleging Eighth Amendment claims against all defendants. With this understanding, the court determined that Rodgers stated an Eighth Amendment claim against Dr. Rankin and Wexford Health Sources for deliberate indifference to a serious medical need. But the district court also concluded that Rodgers did not state an Eighth Amendment claim against Dr. Yousuf or Dr. Foss because, even taking Rodgers' allegations as true, he did not allege that those doctors' actions exhibited anything worse than negligent treatment.

After discovery, Dr. Rankin and Wexford Health Sources moved for summary judgment. The district court granted their motion, concluding that Rodgers failed to establish a genuine dispute of material fact as to whether Dr. Rankin acted with deliberate indifference in dealing with him. Without an underlying constitutional violation, the district court also ruled that Rodgers' claim against Wexford failed.

II. *Analysis*

Injuries and illnesses are common behind prison walls, and because prisoners are unable to obtain their own medical treatment, the government bears responsibility for providing necessary medical care. If government officials fail to provide medical treatment or act with deliberate indifference toward a serious medical need, they may be held liable for violating the Eighth Amendment. Failure to treat injuries and illnesses appropriately can inflict pain and suffering that serve no legitimate penological purpose. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

Prison officials do not violate the Constitution every time they fail to heal a prisoner's injury or cure an illness. *Id.* at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) ("Deliberate indifference is not medical malpractice …."), quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Only when government officials act with "deliberate indifference to serious medical needs of prisoners" do they cause "unnecessary and wanton infliction of pain" that violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. Determining whether medical treatment in a prison setting violates the Eighth Amendment involves a two-step inquiry: first, did the plaintiff have an objectively serious medical condition, and second, did the defendant-official act with deliberate indifference to that condition? *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). The parties agree that Rodgers' scoliosis was a sufficiently serious medical condition, so we focus on deliberate indifference.

The deliberate indifference standard ensures that liability is imposed only on prison officials who act with a sufficiently

culpable state of mind. To satisfy the standard, prisoner-plaintiffs must show that a prison official "*actually* knew of and disregarded a substantial risk of harm." *Id.* Mere negligence, or even objective recklessness, is not enough. A medical professional's erroneous treatment decision violates the Eighth Amendment only where it represents "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Id.* at 729, quoting *Estate of Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). We apply these standards first to the radiologists and then to Dr. Rankin.

A.  *The Radiologists*

In a screening order, the district court construed the allegations against the radiologists, Dr. Yousuf and Dr. Foss, as Eighth Amendment claims and dismissed them. We agree with the district court's order. To state a claim for deliberate indifference under the Eighth Amendment, Rodgers needed to allege that the radiologists "actually knew of and disregarded a substantial risk of harm." *Petties*, 836 F.3d at 728 (emphasis omitted). His complaint failed to do so. He alleged only that "[t]he statements in the report are not true to the images taken." He did not allege that the radiologists intentionally misrepresented their findings, knowingly committed some other form of wrongdoing, or did not care whether their readings were correct or not. Without such allegations, the complaint fails to state an Eighth Amendment claim.

Also, at no point in the district court proceedings did Rodgers indicate that he intended to bring state-law claims for medical malpractice. In oral argument on appeal, as well, Rodgers disclaimed intending to bring such a claim. So while

we assume the factual allegations in Rodgers' complaint could support claims for medical malpractice or negligence, that theory has been waived.

B. *Dr. Rankin*

Rodgers contends next that Dr. Rankin's chosen course of treatment demonstrated deliberate indifference to his back pain. According to Rodgers, Dr. Rankin—who had no prior experience with Harrington rods—ignored Rodgers' concern that his rods had broken and refused to consult a specialist about the matter. Instead, to treat Rodgers' back pain, Dr. Rankin prescribed pain medication and monitored the situation. This course of treatment allegedly delayed correction of the broken Harrington rods by more than a year.

To prove an Eighth Amendment claim for deliberate indifference to a serious medical condition, a prisoner does not need to show that a physician or nurse literally ignored his condition. Where the prisoner received some care, however, it is not easy to prove deliberate indifference. One path, as noted, is to show that a medical professional's treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Estate of Cole*, 94 F.3d at 261–62. Another path is to show that a medical professional refused to consult a needed specialist and/or persisted in a course of treatment that the professional knew was not effective when reasonable alternatives were available. E.g., *Pyles v. Fahim*, 771 F.3d 403, 411–12 (7th Cir. 2014); *Berry v. Peterman*, 604 F.3d 435, 441–42 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005).

Rodgers essentially points out that his broken Harrington rods could have been identified sooner if a different course of treatment had been pursued. We assume he could have been saved from significant pain if that had happened. But to survive summary judgment on his deliberate indifference claim, Rodgers needed to submit evidence creating a dispute as to whether Dr. Rankin's course of treatment followed one of these inappropriate paths. Rodgers did not do so. The district court properly granted summary judgment.

### 1. *Failure to Consult a Specialist*

Failure to consult a specialist can demonstrate deliberate indifference to a serious medical condition if the doctor's decision was "blatantly inappropriate." *Pyles*, 771 F.3d at 411, quoting *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). The undisputed evidence shows this was not such a case. To the extent that Rodgers disputes portions of the evidentiary record, he has not provided evidence that creates a genuine dispute of material fact. We take the events chronologically.

### a. *December 2016*

When Rodgers first met Dr. Rankin in December 2016, he reported only generalized back pain. Dr. Rankin examined Rodgers and noted some "tenderness along the spine." He did not diagnose broken Harrington rods, and there simply is no evidence that he should have done so at that time, let alone that any competent physician would have done so. Dr. Rankin prescribed ibuprofen and a muscle relaxer, and he ordered some special accommodations for Rodgers to ease the stress on his back. According to the evidence in the record, Rodgers did not complain to the medical staff about back pain again for more than a year. This factual record does not create

a dispute of material fact as to whether Dr. Rankin's treatment in December 2016 exhibited deliberate indifference. If anything, from Dr. Rankin's perspective, it would have appeared that the treatment was effective given the lack of follow-up by Rodgers.

Rodgers disputes this evidentiary record. He asserts that he complained of worsening pain throughout 2017. But the only evidence he offers to support this assertion is a prison grievance he wrote two years later, in 2019. The statements in that grievance were not made under oath and they do not contemporaneously corroborate his version of events. Nobody, including Rodgers himself, testified to the veracity of the statements in his grievance. Admissible evidence was needed to create a genuine dispute of material fact on the point. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). That is lacking here.

### b.  *May 2018*

Dr. Rankin next saw Rodgers about his back in May 2018. Rodgers complained of "sharp, throbbing and constant pain" at the base of his neck for a few months. Dr. Rankin testified that he examined Rodgers and noted that he walked "well" but had some muscles bulging out more on the right side of his back than on his left. Dr. Rankin ordered x-rays for Rodgers.

The x-ray report came back a few days later. Dr. Naveed Yousuf, the radiologist, reported that Rodgers' hardware "appears to be intact and in satisfactory alignment." (That finding later turned out to be wrong.) This x-ray report presented Dr. Rankin with a medical puzzle: Rodgers reported an increase in pain, yet there was no identifiable reason for it. Because

Rodgers' pain was not "severe," Dr. Rankin decided to increase his muscle relaxer dosage and continue to monitor his progress.[1]

A doctor who is stumped by a patient's serious condition cannot just throw up his hands when it is obvious that expert attention is needed. *Pyles*, 771 F.3d at 412. Consider, for example, *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). We reversed summary judgment in favor of a jail physician because the physician refused to refer a prisoner to a dentist despite repeated complaints of prolonged and serious tooth pain and the proven ineffectiveness of pain medication. *Id.* at 441–42.

Rodgers' situation was quite different. The information available to Dr. Rankin at the time indicated that the pain medication and other accommodations were working. Rodgers did not report back pain again until December 2018.[2]

We assume that other doctors might have decided to conduct additional testing or consult sooner with a specialist to determine the root cause of Rodgers' back pain. But Rodgers has not presented any evidence that Dr. Rankin's course of treatment departed so substantially from professional standards of care as to support an inference that he was not exercising his professional judgment. Rodgers submitted an

_____

[1] Rodgers contends that he told Dr. Rankin he believed the pain was caused by his Harrington rods and that he asked to see a specialist. Again, these assertions are supported only by Rodgers' unsworn 2019 prison grievance and fail to establish a genuine dispute of a material fact. We express no opinion on whether admissible evidence of such a request by Rodgers would have been material to the outcome here.

[2] In December 2018, Rodgers complained of "nervy" back pain that "comes and goes." Dr. Rankin added a prescription for gabapentin to his existing regimen of Ultram, Robaxin, and Tylenol.

expert witness report by Dr. Ryan Herrington, but that report failed to dispute the adequacy of Dr. Rankin's treatment. Large sections of the report do nothing more than reiterate portions of Dr. Rankin's deposition. To the extent that the report disagreed with Dr. Rankin's course of treatment, it showed only that one person—Dr. Herrington himself— would have made different choices. The report does not raise a genuine dispute as to whether medical professionals more generally would view Dr. Rankin's course of treatment as ineffective or inappropriate. See *Petties*, 836 F.3d at 729 ("[E]vidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.").

### c. *September 2019*

Nine more months passed before Rodgers complained of back pain again. In September 2019, he reported feeling "shooting" pain in his back. He said it felt like something was digging into his back. In response to the marked increase in pain, Dr. Rankin ordered a second round of x-rays. Again, the x-ray report—signed this time by Dr. Jonathan Foss—said erroneously that Rodgers' Harrington rods "appear[ed] intact."

Generally, in both medicine and law, physicians are entitled to rely upon expert opinions of specialists. Accordingly, our case law teaches that a physician can be deemed deliberately indifferent if he or she refuses, at least without good reason, to take instructions from a specialist. See *Petties*, 836 F.3d at 729, citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). But here, after reading the second x-ray report, Dr. Rankin decided to review the x-rays himself. Exercising his own judgment to double-check the x-rays turned out to be the right course. He discovered that Rodgers' Harrington rods were

fractured. Dr. Rankin told Dr. Foss what he had found, and Dr. Foss double-checked and confirmed that the Harrington rods were indeed broken. He revised his x-ray report to note the broken hardware. Dr. Rankin immediately began to seek out specialists to treat the problem.

From this record, no reasonable jury could find that it was obvious that Dr. Rankin should have sought specialized advice earlier. Far from it. Dr. Rankin tried to discern the cause of Rodgers' back pain. When those attempts failed, he prescribed pain medication that could at least manage Rodgers' pain. When Rodgers' pain increased, Dr. Rankin made renewed efforts to figure out why. He twice ordered x-rays that should have revealed Rodgers' broken Harrington rods much earlier, and he personally discovered the broken rods after two erroneous reports from radiologists.

Rodgers contends that Dr. Rankin did not "monitor" him after May 2018. The factual record belies this assertion. In addition to the instances noted above in which Dr. Rankin examined Rodgers after he reported pain, Dr. Rankin saw Rodgers at least two additional times in September 2018 and April 2019 for unrelated health matters. The evidence does not show that Rodgers reported back pain at either appointment.

Further, even if Rodgers' assertion that Dr. Rankin failed to monitor him were true as a factual matter, Rodgers fails to explain why it would matter in relation to his deliberate indifference claim. He does not provide evidence that the prevailing standards of care dictated that Dr. Rankin monitor Rodgers more than he did. Again, Rodgers fails to establish a disputed material fact.

2. *Delay*

It is well established that delayed treatment of painful conditions can demonstrate deliberate indifference. See *Petties*, 836 F.3d at 730 (collecting cases). Arguing along those lines, Rodgers contends that Dr. Rankin's course of treatment caused an inexcusable delay in resolving his back pain. We have no trouble assuming that Rodgers suffered severe pain due to his broken Harrington rods. Hindsight tells us that the rods had broken as early as May 2018, yet Rodgers did not undergo surgery until June 2020. It is easy to imagine that alternative courses of treatment could have eased his pain sooner.

But liability under Section 1983 for an individual defendant is determined based on individual responsibility. Rodgers has not presented evidence showing that Dr. Rankin himself caused the delay through deliberate indifference to Rodgers' condition. Other factors—especially Dr. Yousuf's error in reading the May 2018 x-rays and later effects of COVID on healthcare in prisons—delayed the surgery Rodgers ultimately needed. Because Rodgers does not present evidence demonstrating that Dr. Rankin's course of treatment amounted to deliberate indifference, we affirm summary judgment on this ground.

3. *Retaliation*

Finally, Rodgers argues that Dr. Rankin threatened to reduce his pain medication in retaliation for submitting medical complaints. To support this assertion, however, Rodgers again relies on only the statements in his unsworn 2019 prison grievance. The grievance fails to create a dispute of material fact for the reasons discussed above. All the other admissible

evidence in the record controverts this claim. Every time Rodgers complained of an increase in pain, Dr. Rankin tried altering his pain medication to alleviate the symptoms. Simply put, Rodgers has not presented evidence creating a genuine dispute as to whether Dr. Rankin threatened to reduce his pain medication.

The judgment of the district court is AFFIRMED.